UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CAROLYN R. JONES,

                         Plaintiff,        **No. 6:14-cv-06316(MAT)**
                                           **DECISION AND ORDER**

            -vs-

CAROLYN W. COLVN, Acting
Commissioner of Social Security,

                         Defendant.

_____

## I.   Introduction

     Represented by counsel, Carolyn R. Jones ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act, challenging the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Supplemental Security Income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is reversed, and the matter is remanded solely for calculation and payment of benefits.

## II.  Background

     Plaintiff has suffered from two heart attacks, on November 24, 2006 and February 26, 2012. T.324, 709.[1] Since November 24, 2006, Plaintiff has been diagnosed with, and has received treatment for, coronary artery disease ("CAD"), severe degenerative arthritis of

_____

[1]
     Numbers preceded by "T." refer to pages from the administrative transcript, submitted by Defendant as a separately bound exhibit.

the right knee, asthma (induced, primarily, by cold weather), fibromyalgia, depression, bilateral carpal tunnel syndrome, and gastroesophageal reflux disease ("GERD"). See, e.g., T.505, 701 (CAD), T.412, 414, 416, 418, 420—21, 885, 887, 889 (right knee arthritis), T.41—42, 505 (asthma), T.374 (medications for fibromyalgia), T.369—70 (depression), T.365 (bilateral carpal tunnel syndrome), T.732 (GERD).

On July 2, 2008, Plaintiff filed an application for SSI, alleging disability commencing on November 24, 2006, due to various medical conditions, including CAD, arthritis, fibromyalgia, asthma, and depression. T.188—90. After the application was denied on December 9, 2008, Plaintiff requested a hearing, which was held on December 9, 2009, before administrative law judge Michael W. Devlin ("the ALJ"). T.33—50. Plaintiff testified; however, the ALJ did not call a vocation or other expert. On June 25, 2010, the ALJ issued a decision finding Plaintiff not disabled ("the First Decision"). T.76—86.

Plaintiff filed a brief with the Appeals Council ("the AC"), T.291—300, which found several errors warranting remand of Plaintiff's application to the ALJ. T.92-95. In particular, the AC found that the ALJ had failed to submit a follow-up request to obtain certain records, with which Plaintiff had requested assistance; failed to proffer to Plaintiff or her attorney certain post-hearing medical evidence; failed to complete the record; gave

-2-

inadequate consideration to Plaintiff's maximum residual functional capacity ("RFC"); and did not provide an appropriate rationale with specific references to the record evidence in support of the assessed limitations. T.93-94. The ALJ was directed to obtain testimony from a vocational expert, if such was warranted by the expanded record. T.94.

Plaintiff was afforded a second hearing before the ALJ on September 6, 2012. T.15, 51—71, 142. Plaintiff again testified, as did vocational expert Peter Manzi ("the VE"). On October 17, 2012, the ALJ again found Plaintiff not disabled ("the Second Decision"). T.15—25. The AC denied Plaintiff's second request for review on March 4, 2014, making the Second Decision the Commissioner's final decision. T.5. On May 10, 2014, the Appeals Council granted Plaintiff additional time to file a civil action. Plaintiff filed the instant complaint on June 10, 2014.

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rule of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual recitations contained in the parties' briefs (Dkt. #9-1 at 2-18; Dkt. #10-1 at 2-17). The record evidence will be discussed in further detail as necessary to the resolution of the parties' contentions.

### III. Scope of Review

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Social Security Act ("the Act"), the district court is limited to determining whether the Commissioner's findings were supported by substantial record evidence and whether the Commissioner employed the proper legal standards. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)). "Failure to apply the correct legal standards is grounds for reversal." Townley, 748 F.2d at 112.

### IV. The ALJ's Second Decision

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating SSI claims. At step one, the ALJ found that Plaintiff had not engaged in

substantial gainful employment since the application date. At step two, he found that she had the following "severe" medically determinable impairments: arthritis of both knees; arteriosclerotic cardiovascular disease, status post-myocardial infarction; asthma; depressive disorder; and anxiety disorder. T.17. The ALJ determined that Plaintiff's non-severe conditions were high blood pressure, high cholesterol, GERD, left hip pain, right shoulder pain, carpal tunnel syndrome, and fibromyalgia. T.17. With regard to the allegation of fibromyalgia, the ALJ found Plaintiff did not meet the criteria set forth in Social Security Ruling ("SSR") 12-2p. The ALJ stated, without explanation, that the other nonsevere impairments did not result in more than minimal limitations in her ability to perform work functions and therefore were nonsevere. T.17.

At step three, the ALJ considered several listed impairments (1.02 (major dysfunction of a joint(s)), 3.03 (asthma), 4.02 (chronic heart failure), 12.04 (affective disorders), and 12.06 (anxiety disorders)) and found that Plaintiff did not meet or medically equal any of them. T.18—19. With regard to Listings 12.04 (affective disorders) and 12.06 (anxiety disorders), the ALJ again found Plaintiff had "mild" limitations in activities of daily living, and "moderate" limitations in social functioning and maintaining concentration, persistence, or pace. T.19. The ALJ found no episodes of decompensation, or evidence of a chronic

organic mental disorder, or chronic affective disorder causing more
than minimal limitations on Plaintiff's ability to do basic work
activities. Therefore, he found that Plaintiff did not fulfill the
criteria of Paragraphs B or C of those listings. T.19.

At the fourth step, the ALJ found that Plaintiff had the RFC
to engage in sedentary work as defined in 20 C.F.R. § 416.967(a),
except that she

> is able to occasionally lift and/or carry ten pounds;
> frequently lift and/or carry less than ten pounds; stand
> and/or walk at least two hours in an eight hour workday;
> sit about six hours in an eight hour workday;
> occasionally push and/or pull up to ten pounds;
> occasionally climb ramps and/or stairs, stoop, kneel,
> crouch, and crawl; never climb ladders/ropes/scaffolds;
> frequently balance; never use vibratory tools; avoid
> concentrated exposure to fumes, odors, dusts, gases, poor
> ventilation, and other respiratory irritants; avoid
> concentrated exposure to extreme cold and extreme heat;
> understand, remember, and carry out simple instructions
> and tasks; frequently interact with co-workers and
> supervisors; occasionally have contact with the general
> public; and is able to consistently maintain
> concentration and focus for up to two hours at a time.

T.19—20. The remainder of the ALJ's RFC determination summarized
the medical evidence without analysis. T.21—23. The ALJ found that
his RFC was supported by the opinions of consultative physician
Karl Eurenius, M.D., state agency medical consultant Neil Novin,
M.D., and state agency psychiatry consultant Richard Altmansberger,
M.D. T.23.

At the fifth step, the ALJ found that Plaintiff was a younger
individual with no past relevant work and "at least" a high school
education. T.23-24. The ALJ relied on the VE's hearing testimony,

which he found consistent with the Dictionary of Occupational Titles, to find that Plaintiff could perform the requirements of representative occupations such as General Assembler (unskilled, SVP 2, sedentary) and Addresser (unskilled, SVP 2, sedentary), which exist in significant numbers in the national and regional economies. T.24. Therefore, a finding of "not disabled" was appropriate. Id.

## V.    Discussion

### A.    RFC Not Supported by Substantial Evidence (Plaintiff's Claims One and Three)

Plaintiff contends that the RFC determination is not supported by substantial evidence because it relies on stale opinions from the consultative examiners and non-examining state agency physicians issued in 2008, which are reliant on an incomplete medical record. Plaintiff also asserts that the ALJ failed in his regulatory duty to develop the record by obtaining updated consultative examinations and by requesting a medical source statement from one of her treating physicians.

Because disability determinations are "investigatory, or inquisitorial, rather than adversarial . . . it is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004) (internal quotation marks and citations omitted). The ALJ bears this duty even when the claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir.

1996) (citations omitted). In particular, the record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's RFC. SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("The adjudicator must . . . make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.").

A claimant's RFC "is the most [she] can still do despite [her] limitations[,]" 20 C.F.R. § 416.945(a)(1), and is determined based upon consideration of "*all* of the relevant medical and other evidence," including a claimant's subjective complaints of pain and other limitations. Id. § 416.945(a)(3) (emphasis supplied). The ALJ's RFC determination must be supported by substantial evidence in the record. See 42 U.S.C. § 405(g). In formulating a claimant's RFC, an ALJ properly may rely on the opinions issued by state agency doctors, but the weight they can be given depends in large part on the completeness of the medical record before them:

> [T]he opinions of State agency medical and psychological consultants . . . can be given weight *only insofar as they are supported by evidence in the case record*, considering such factors as the supportability of the opinion in the evidence *including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency*, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or

psychological consultant or other program physician or
psychologist.

SSR 96-6p (emphases supplied).

Here, the ALJ gave "significant weight" to the opinions of
consultative physician Dr. Eurenius, who examined Plaintiff on
November 19, 2008. T.23. He also gave "significant" weight to the
opinions of non-examining state agency review physicians Dr. Novin
and Dr. Max Miller who reviewed Plaintiff's records on October 8,
2008, and October 14, 2008 respectively.  T.23. Finally, he gave
"significant" weight to the opinions of non-examining state agency
review psychiatrist Dr. Altsmanberger, who completed a psychiatric
review technique and a mental RFC assessment; and of Dr. Aroon
Suansilppongse, who reviewed Dr. Altmansberger's findings. T.23.
All of these opinions were issued in 2008, while the ALJ's Second
Decision was issued on October 17, 2012. This means that these
physicians did not have before them approximately four years of
Plaintiff's medical records, including the records related to
Plaintiff's second heart attack. "The timeliness of evidence is .
. . a factor that courts have cited in finding a lack of
substantial evidence in the record to affirm a decision on benefits
by the Commissioner." Acevedo v. Astrue, No. 11 Civ.
8853(JMF)(JLC), 2012 WL 4377323, at *16 (S.D.N.Y. Sept. 4, 2012)
(citing, inter alia, Griffith v. Astrue, No. 08 Civ. 6004(CJS),
2009 WL 909630, at *9 n. 9 (W.D.N.Y. Mar. 31, 2009) ("The State
Agency Officials' reports, which are conclusory, stale, and based

on an incomplete medical record, are not substantial evidence.") (citation omitted); Suarez v. Comm'r of Social Sec., No. 09 Civ. 338(SLT), 2010 WL 3322536, at *8 (E.D.N.Y. Aug. 20, 2010) ("[B]ecause [Dr. Weiss's opinion is both outdated and inconsistent with Dr. Misra's more recent findings, the propositions which the ALJ relied on Dr. Weiss's opinion for when determining Plaintiff's RFC should not have been afforded substantial weight without further explanation.")). Furthermore, there is an inherent inconsistency in the ALJ's according "significant" weight to both Drs. Altmansberger's and Suansilppongse's mental RFC assessments, since, as the ALJ acknowledged, Dr. Suansilppongse disagreed with several of Dr. Altmansberger's findings, including the limitations on sustaining concentration, persistence, and pace, and decompensation. T.22 (citations omitted).

According to the Commissioner, the ALJ's failure to obtain updated evaluations and reports from the state agency physicians had no effect on his RFC assessment because the most recent records do not show Plaintiff's cardiac condition to be deteriorating. However, the Commissioner selectively cites reports from 2008, 2009, and 2011-all of which pre-date Plaintiff's second heart attack in late February 2012. The Commissioner also dismisses Plaintiff's continued complaints of chest pain, stating her cardiologists now believe that the chest pains are non-cardiac in etiology. However, the fact remains that Plaintiff continues to

allege debilitating chest pains and shortness of breath. For instance, on June 4, 2010, and April 29, 2011,[2] her cardiologists note that Plaintiff's symptoms of atypical chest pain and shortness of breath had resumed, notwithstanding the stabilization in her cardiac condition. At the time of the second hearing, she was experiencing frequent bouts of shortness of breath and chest pain (about three times per day) which she describes as a "crushing pain" that feels "like something is sitting on [her chest]." T.57.

As an illustrative example of the staleness of the 2008 reports relied on by the ALJ, the Court notes that in his November 19, 2008, report, consultative physician Dr. Eurenius stated that, due to her "ongoing coronary artery disease," Plaintiff was only "moderately limited in exertional activities such as walking more than two blocks [or] climbing more than one flight" of stairs. T.504-05. By the time of the second hearing, however, Plaintiff had experienced a second heart attack on February 26, 2012, which occurred not while she was exerting herself, but while she was at rest, watching television. T.701, 704, 709. Also, Plaintiff had been taking nitroglycerin (which she had not been doing at the time

---

[2] On April 29, 2011, Plaintiff returned to see her cardiologists due to "new episodes of CP [chest pain], starting 2-3 weeks ago. Her children's father recently died and she has had frequent episodes of chest discomfort, associated with emotional upset. She also reports similar episodes with exertion, such as climbing stairs." T.661.

of Dr. Eurenius's evaluation), but it had been ineffective at relieving her chest pain and shortness of breath.

The Court finds it troubling that as a reason for justifying his RFC, the ALJ stated that the record did not contain any opinions from treating or examining physicians indicating that Plaintiff has limitations greater than those stated in the ALJ's RFC assessment. T.23. However, it does not appear that the ALJ requested medical source statements from any of Plaintiff's treating physicians. Thus, it was improper for the ALJ to draw this adverse inference against Plaintiff. See Jermyn v. Colvin, No. 13-CV-5093(MKB), 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("Instead of developing the record, the ALJ reached his RFC conclusion based, in part, on the absence of this information in the record, stating that his RFC determination 'is supported by . . . the lack of medical opinion evidence of any greater functional limitations.' However, the ALJ was not permitted to construe the silence in the record as to Plaintiff's functional capacity as indicating support for his determination as to Plaintiff's limitations.") (citing, inter alia, Rosa v. Callahan, 168 F.3d 72, 81 (2d Cir. 1999); citation to record omitted). In addition, although the Commissioner emphasizes the length of the record, Plaintiff notes that a good deal of it consists of duplicate copies of the same records, making total page number a poor indicator of completeness.

Finally, the Court notes that the ALJ did not include in the RFC assessment a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical and non-medical evidence. <u>See</u>, <u>e.g.</u>, <u>Trail v. Astrue</u>, 5:09-CV-1120, 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7). The ALJ erroneously failed to discuss any evidence, let alone specific facts in the record, supporting his conclusion that Plaintiff had the ability, notwithstanding her multiple severe impairments, to perform sedentary work.

## B. Erroneous Credibility Determination (Plaintiff's Claim Two)

Plaintiff asserts that the ALJ employed an incorrect legal standard in assessing the credibility of her subjective complaints of pain and other limitations and mischaracterized the record.

The ALJ essentially penalized Plaintiff for "car[ing] for her three children by herself" and navigating public transportation. T.23. This is contrary to the Second Circuit's precepts stating "[w]hen a disabled person gamely chooses to endure pain in order to pursue important goals [such as raising her children, or attending a hearing], it would be a shame to hold this endurance against [her] in determining benefit, unless [her] conduct truly showed that [she] is capable of working." <u>Nelson v. Bowen</u>, 882 F.2d 45, 49 (2d Cir. 1989); <u>see also</u>, <u>e.g.</u>, <u>Downey v. Barnhart</u>, 294 F. Supp.2d 495, 502 (S.D.N.Y. 2003). Furthermore, the ALJ neglects to mention that Plaintiff's children are in their early teens, and that

Plaintiff in fact relies heavily on them for assistance in, e.g., shopping, cooking, and "getting in and out of the shower, putting on [her] clothes, definitely putting on [her] shoes." T.63-64; see also T.365, 383 (Plaintiff's primary care physician, Dr. Pierce, noted that Plaintiff's pain had limited her mobility to the extent that she was "making her children get things for her so she doesn't have to walk.").

The ALJ also found that the "record does not include treatment records indicating that the claimant is totally disabled." T.23. Again, this reflects a misapprehension of the proper legal standard. It is well-settled that the performance of basic daily activities of daily living does not necessarily contradict allegations of disability, "as people should not be penalized for enduring the pain of their disability in order to care for themselves." Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000); see also Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act.") (quotation omitted). Furthermore, if the record contained statements from treating sources opining that Plaintiff was "totally disabled", the ALJ would have been entitled to disregard them, since the ultimate issue of disability is reserved to the Commissioner. See SSR 96-5p (stating that "treating source opinions on issues reserved to the Commissioner are never entitled to

controlling weight or special significance"); 20 C.F.R. § 416.927(d)(1) ("[o]pinions that [claimants] are disabled" are "reserved to the Commissioner"). Finally, although the ALJ discredits Plaintiff's complaints because the record does not indicate limitations placed on her by her physicians, the lack of such records is due to the ALJ's failure to develop the record, as discussed above.

### C. Step Five Finding Unsupported by Substantial Evidence (Plaintiff's Claim Four)

Plaintiff argues that because the ALJ relied on a deficient RFC, the hypothetical questions he posed to the VE were incomplete, leading to a step five finding that is not supported by substantial evidence. See DeLeon v. Sec'y of Health and Human Servs., 734 F.2d 930, 936 (2d Cir. 1984) (finding error where, "[i]n positing hypothetical questions to the vocational consultant, . . . the ALJ did not even present the full extent of [claimant]'s physical disabilities").

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (stating that a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with [her] limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d

Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments. . . .") (internal citations and quotation marks omitted). A VE's response to an inadequate hypothetical cannot constitute "substantial evidence" to support a conclusion of no disability. <u>Morse v. Shalala</u>, 16 F.3d. 865, 874 (8th Cir. 1994) (quoted in <u>Melligan v. Chater</u>, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

As discussed above, the ALJ's RFC assessment and credibility analysis were defective and led him to discount several additional limitations about which Plaintiff testified and which were supported by the record. For example, Plaintiff testified that three times a day she experiences shortness of breath and a "crushing pain" in her chest that feels "like something is sitting on [her chest]." T.57. These angina-like symptoms would require additional, unscheduled breaks throughout the day, which were not included in the ALJ's first three hypotheticals. In his final hypothetical, the ALJ asked the VE to account for two or more unscheduled 15-minute breaks due to complications related to chest pain, the VE testified, "if there was a full hour's worth of break time, then it would rule out work. It's questionable, and because it's questionable I'm just going to say there wouldn't be work with three [breaks]." T.69—70.

The record also contains significant limitations regarding Plaintiff's mental impairments, for which the ALJ did not account.

Consultative psychologist Margery Baittle, Ph.D. found that Plaintiff's recent and remote memory skills were mildly impaired due to limited intellectual functioning, cognitive functioning that was below average, and a limited general fund of information. T.449. Dr. Baittle noted that Plaintiff "also relate[d] some anxiety symptoms, such as, again, irritability, being easily fatigued, nightmares, restlessness, trouble concentrating and has flashbacks . . . about 'falling into a hole and dying.'" T.448. Dr. Baittle described her affect as "anxious and somewhat helpless." T.449. She has "trouble dealing with stress" and "[d]ifficulties . . . caused by cognitive deficits." T.450. Dr. Baittle assessed Plaintiff's prognosis as "[g]uarded, given the above situation with limited vocational skills and some limited cognitive functioning." T.451. However, the ALJ rejected Dr. Baittle's opinion, T.447-51, as unsupported by the record, T.23, even though the record does not contain any records contradicting Dr. Baittle's findings concerning Plaintiff's cognitive limitations. The ALJ's hypotheticals did not include any of the cognitive limitations identified by Dr. Baittle, however. See, e.g., T.66.

Here, because the hypothetical questions were based upon an RFC that did not realistically and accurately describe Plaintiff's limitations, the VE's testimony cannot provide substantial evidence to support the finding of no disability. E.g., Futia v. Astrue,

-17-

No. 1:06-cv-0961(NAM), 2009 WL 425657, at *9 (N.D.N.Y. Feb. 19, 2009).

## VI.  Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp.2d 309, 310 (S.D.N.Y. 2004) (citations omitted). The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). That standard is easily met here, as discussed above. Reversal for calculation of benefits is particularly appropriate because Plaintiff's benefits claim has been pending for over seven years, and additional administrative proceedings would only lead to further delay.

## VII. Conclusion

For the foregoing reasons, the Commissioner's decision is reversed because it is the product of legal error and is not based on substantial evidence. Defendant's motion for judgment on the

pleadings (Dkt #10) is denied. Plaintiff's motion for judgment on the pleadings (Dkt. #9) is granted, and the matter is reversed and remanded solely for the calculation and payment of benefits.

**SO ORDERED.**

**S/Michael A. Telesca**

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:      August 3, 2015
            Rochester, New York